(192 P.3d 651)
No. 98,252

STATE OF KANSAS, *Appellee,* v. DAMON RASHAD GLASS, *Appellant.*

Opinion filed September 19, 2008.

*Sarah Morrison,* of Kansas Appellate Defender Office, for appellant.

*Jamie L. Karasek,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

BUSER, J.: Damon Rashad Glass was convicted of two counts of aggravated robbery following a bench trial on stipulated facts. Glass appeals the denial of his pretrial motion to suppress evidence. He also appeals his sentence which was calculated using juvenile adjudications in his criminal history. We affirm.

## Factual and Procedural Background

At about 9:47 p.m., on November 30, 2005, Callie Richmond, a liquor store clerk working at a liquor store in Topeka, Kansas, reported to police that two black males armed with handguns and wearing white t-shirts, black hooded jackets, and black gloves had just robbed the store. Richmond reported the robbers had left on foot westbound but speculated they were headed to the north. About 30 seconds later, the police dispatcher put out a general call reporting the robbery, the store location, and describing the robbers as two black males wearing white t-shirts and black hooded zip-up jackets, who left westbound on foot around the building.

At the time of the dispatch, Officer James Moore was less than 1 mile from the liquor store. He testified the dispatcher described the two robbers as black males dressed in black and armed with a small black handgun. Officer Moore drove toward the crime scene on a street adjacent to the liquor store, which he described as "kind of like a back way in."

A few blocks from the liquor store and less than a minute after receiving the dispatch reporting the robbery, Officer Moore noticed a vehicle heading eastbound and traveling away from the liquor store. As Officer Moore drove past this vehicle, he shined a light into it and noticed two black males in the front seat. One was wearing a white t-shirt and the other was wearing a black outfit. No other cars were in the area.

Officer Moore made a u-turn and stopped the vehicle. While Officer Moore was speaking with the driver, he noticed the passenger, Glass, stuffing something between the seat and the console. When Officer Moore asked Glass to exit the vehicle, he noticed a third black man, wearing black clothing, sitting in the back seat. When the back-seat passenger exited the vehicle, a large sum of money fell out of his lap. The three men were arrested. Cash in

various denominations, liquor, a handgun, a black sweatshirt, two pairs of gloves, and a black stocking cap with holes cut in it were recovered from the car.

Glass was charged with two counts of aggravated robbery. Prior to trial he moved to suppress all evidence recovered as a result of the vehicle stop. In particular, Glass contended Officer Moore did not have a reasonable suspicion to believe the individuals in the vehicle were involved in the robbery at the time of the vehicle stop.

At the suppression hearing, the parties stipulated to Officer Moore's testimony at the preliminary hearing. Relying on *State v. Baker*, 239 Kan. 403, 720 P.2d 1112 (1986), the district court found that Officer Moore had reasonable suspicion to stop the vehicle and, as a result, denied the motion to suppress. The district court also denied Glass' motion to reconsider.

Glass was convicted of both aggravated robbery counts following a bench trial on stipulated facts. The district court granted Glass a durational departure and sentenced him to concurrent 48-month sentences. Glass timely appealed the denial of his suppression motion and his sentencing.

## The Propriety of the Vehicle Stop

Glass contends: "The district court erred in failing to suppress the evidence found in the vehicle and the resulting statements because Officer Moore did not have reasonable articulable suspicion required to stop Mr. Glass."

"When considering a district court's decision regarding the suppression of evidence, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. Appellate courts do not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence." *State v. Greever*, 286 Kan. 124, Syl. ¶ 2, 183 P.3d 788 (2008).

The State bears the burden of proof to demonstrate that a search or seizure that led to the discovery of the evidence in question was lawful. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

A traffic stop is considered a seizure under the Fourth Amendment to the United States Constitution. *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 802, 172 P.3d 1205 (1997). To stop a

moving vehicle, an officer must have a reasonable suspicion based on articulable facts that a crime has been, is being, or is about to be committed. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 636, 176 P.3d 938 (2008); see K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

"Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 (1999).

On appeal, Glass argues the district court erred in basing its decision on *Baker*. According to Glass, the *Baker* decision was predicated on a totality of circumstances that was dissimilar to the facts presented in this case.

In *Baker*, a gas station attendant was robbed by two black men at gunpoint around 11:30 p.m. Two officers in separate cars were 16 blocks from the scene when the dispatcher reported that a robbery was just committed by two black men dressed in black jackets and blue jeans. The officers proceeded toward the scene of the robbery, each using a different route in anticipation that the robbers might be encountered fleeing the scene.

While en route, one of the officers encountered a vehicle traveling in the opposite direction. The officer shined a light from his patrol car on the vehicle and observed the car to be occupied by three black males, each dressed in dark clothing. Based on the dispatcher's description that the robbers were two black males dressed in black jackets and wearing blue jeans, the officer turned his patrol car around to stop the vehicle. Meanwhile, after passing the police car, the suspect vehicle turned at the next intersection and parked at a curb with its lights out. The vehicle's lights were then turned on as the officer stopped his patrol vehicle, with emergency equipment activated, behind the suspect vehicle. The officer

ordered the occupants out of the car. A large sum of money and a firearm were found in the vehicle, and two of the occupants were eventually convicted of aggravated robbery.

Our Supreme Court upheld the district court's determination that the officer properly stopped the vehicle based upon a reasonable suspicion the men were involved in the robbery. 239 Kan. at 408-09. The Supreme Court observed:

"[T]he report was of two robbers, with no indication of how they made their getaway, it was not unreasonable for the officers, who were assigned to patrol duty in the area and were familiar with it, to anticipate that the robbers fled in a waiting automobile with a third person acting as the wheelman." 239 Kan. at 408.

The *Baker* court highlighted that it was almost midnight, the officer approached the suspect vehicle in a quiet residential area with no other vehicles in the vicinity, the officer's use of the light evidenced a suspicion that those streets might be used as an escape route, the officer had observed three black men dressed in dark clothing, and that based on this information and his training and experience, the officer decided to check the vehicle and its occupants further. In upholding the search and seizure, the *Baker* court also referenced the suspect vehicle's movements after the officer began to pursue the vehicle. 239 Kan. at 408-09.

In the present case, the district court found "by a narrow margin" that reasonable suspicion existed for the vehicle stop by comparing the facts of this case to *Baker*:

"The facts are substantially the same here. While Officer Moore acknowledged that he saw two males, one in a white shirt and one in black, this description is substantial enough to raise reasonable suspicion when combined with the other factors. While, as in *Baker*, this Court believes it may have been reasonable to stop a vehicle with occupants that matched the description of suspects of a robbery even though there was no indication the suspects drove away from the scene, it was not reasonable to rest this suspicion merely on the description of two black males driving in the area. The remaining factors, however, complete the total picture in a way that does constitute reasonable suspicion on the part of Officer Moore. The officer in *Baker* articulated his reason for stopping the vehicle based upon the fact that it was the only vehicle in the area of the robbery, as here, and that it was located close to the scene of the robbery (within sixteen blocks compared to a few blocks here), and near in time to the robbery."

In seeking reconsideration of the district court's adverse decision, Glass argued the court based its decision on only two factors: that two black men were observed in a vehicle in close proximity to the armed robbery. The district court, however, found this argument overlooked the additional factors that the vehicle was only a few blocks from the location of the robbery within 1 minute of the dispatch call to the officer, it was the only traffic in the vicinity, and at least one of the occupants wore clothing that matched the description of the suspects. The court also rejected Glass' argument distinguishing this case from *Baker,* reasoning that although the vehicle in *Baker* had pulled off the road and turned off its lights, these movements occurred after the officer had decided to stop the vehicle based on substantially similar facts as presented in this case.

On appeal, Glass emphasizes:

"The Kansas Supreme Court did not indicate in *Baker* whether [the police officer] had reasonable suspicion to stop the vehicle at the time [he] turned his vehicle around to follow the defendant's car. Its ruling was based on the totality of the circumstances, including the suspicious driving following [the police officer's] turn in pursuit."

It is well settled that, for purposes of Fourth Amendment analysis, a seizure is not effected until an individual submits to police authority.

"[A] seizure of a person occurs if there is the application of physical force or if there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority." *State v. Morris,* 276 Kan. 11, 18-19, 72 P.3d 570 (2003) (citing *California v. Hodari,* 499 U.S. 621, 624, 628, 629, 113 L. Ed. 2d 690, 111 S. Ct. 1547 [1991]).

Until the occupants of the car in *Baker* had acceded to the officer's order to get out of the car, they were not seized. Moreover, until the occupants were seized, the officer could properly consider whatever other circumstances arose in his assessment of reasonable suspicion. In summary, we are persuaded that in *Baker,* the vehicle's suspicious movements after being observed by the police were a factor in our Supreme Court's determination of the totality of the circumstances.

The State counters that this additional suspicious factor in *Baker* is not sufficient to meaningfully distinguish *Baker* from the present case and undermine the rationale for *Baker*'s precedent. This argument has merit.

We conclude *Baker* is sufficiently similar to the facts of the present case as to provide precedent that Officer Moore had a reasonable suspicion based on articulable facts to stop the vehicle. Several factors, considered together, are important to our holding.

First, as in the *Baker* case, Officer Moore possessed reputable information that an identified citizen from a known retail store had reported to the police that she had just been robbed by two armed men. The source of this information had an indicia of trustworthiness upon which Officer Moore could appropriately rely. See *State v. Slater*, 267 Kan. 694, 700-01, 986 P.2d 1038 (1999) ("An identified citizen-informant's tip is high on the reliability scale and '[f]urther weighing in favor of the reliability and veracity of a named citizen-informant is that "the informant is exposed to possible criminal and civil prosecution if the report is false." ' ") (quoting *Kaysville City v. Mulcahy*, 943 P.2d 231, 235 [Utah App. 1997]).

Second, similar to *Baker*, Officer Moore observed the suspect vehicle traveling away from the crime scene on a route he knew was a "back way" from the liquor store. Given that the robbery had just occurred, it was common sense to anticipate that the perpetrators would attempt to flee the area using a back way to avoid detection. See *United States v. Danielson*, 728 F.2d 1143, 1147 (8th Cir. 1984) ("automobile was traveling on a route and in a direction which the officers anticipated the fleeing robbers would take"); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) (police stopped armed robbery suspects "on a likely escape route").

Third, mirroring the facts in *Baker*, at the time Officer Moore observed the suspect vehicle it was only 1 minute after the report of the just-completed robbery and only a few blocks from the robbery scene. This combination of the short period of time which had elapsed since the robbery and the vehicle's close proximity to the crime scene made it probable that the suspect vehicle was one

of a limited number of vehicles which could be occupied by the fleeing robbers. See *State v. Bailey*, 247 Kan. 330, 335, 799 P.2d 977 (1990), *cert. denied* 500 U.S. 920 (1991) ("The proximity of time and place with the crime scene was very close."); *Bryant v. State*, 157 Ind. App. 198, 208, 299 N.E.2d 200 (1973) ("the time and spatial relation of the 'stop' to the crime" was one factor justifying investigatory vehicle stop).

Moreover, the suspect vehicle was the *only* vehicle observed by Officer Moore in the vicinity of the liquor store late that evening. This fact further increased the probability that the occupants were involved in the robbery. *People v. Mascarenas*, 726 P.2d 644, 645-46 (Colo. 1986) (Defendants' vehicle was stopped about 1 minute after the burglary was reported and within 1 block of the scene of the crime heading away from the crime scene in a residential area with little traffic.).

Fourth, unlike *Baker*, Officer Moore observed two black men inside the suspect vehicle which was identical to Richmond's description of the number, race, and sex of the robbers. In *Baker*, the responding officer saw three men in the car, although the victim had reported only two men. In the present case, it was only after the stop that Officer Moore observed a third black man in the rear passenger seat. As our Supreme Court observed in *Baker*, however, "it was not unreasonable for the officers, who were assigned to patrol duty in the area and were familiar with it, to anticipate that the robbers fled in a waiting automobile with a third person acting as the wheelman." 239 Kan. at 408.

Finally, akin to *Baker*, one of the occupants of the suspect vehicle was wearing dark clothing, which was consistent with Richmond's description of the robbers' clothing.

In addition to *Baker*, the *Bailey* case also shares factual similarities to the present case. In *Bailey*, a police officer was dispatched to an aggravated robbery and shooting which had just occurred at a gas station. The suspect was described as a black male wearing a yellow baseball cap, who fled the area on foot. Fortuitously, the officer was located near the crime scene. As he drove to that location, the officer observed a vehicle driven by a young black man driving away from the area "nervously looking from side to side as

though looking for something." 247 Kan. at 331. In upholding the subsequent vehicle stop, our Supreme Court observed: "[T]he officer made the stop based on the location, time, description and suspicious behavior of defendant, and the need for immediate action." 247 Kan at 335.

In considering the propriety of the vehicle stop, we are guided by the following questions referenced by our Supreme Court in *Bailey* regarding the weight to be given certain facts and circumstances:

" 'Are alternative means of further investigation available, such as a license plate check, closer observation of the suspects, or obtaining additional information? If so, the reasonableness of the stop based on scant facts may well be questionable. *Is there a possibility that if law enforcement officers do not act immediately the opportunity for further investigation would be lost? A minimal amount of facts may, under these circumstances, be given greater weight than if the opportunity to act in the future is not foreclosed.* What actions would be necessary following the stop for law enforcement officers to determine whether to arrest or release the suspected individual? *Will the stop create the opportunity to corroborate a known physical feature of a suspect or clothing description with minimal intrusion on personal security?*' " (Emphasis added.) 247 Kan. at 334-35 (quoting *State v. Guzy*, 139 Wis. 2d 663, 678-79, 407 N.W.2d 548, *cert. denied* 484 U.S. 979 [1987]).

In the present case, given the exigencies of the just-reported aggravated robbery, Officer Moore had only a few minutes and a few blocks to apprehend the robbers before they fled the area. If the officer had not reacted immediately and stopped the suspect vehicle, the unique opportunity to apprehend armed robbers in possession of a weapon, the fruits of their crime, and incriminating evidence would have been forever lost. On the other hand, had the vehicle not contained the robbers, Officer Moore's brief vehicle stop would have allayed his suspicions with minimal intrusion on the privacy of the vehicle's occupants. See *State v. Crawford*, 275 Kan. 492, 497, 67 P.3d 115 (2003) (brief investigatory stops of motor vehicles based upon reasonable suspicion are "minimal intrusions" when "balanced against the substantial harm caused by intoxicated drivers") (quoting *Slater*, 267 Kan. at 706). Accordingly, as in *Baker* and *Bailey*, the urgent circumstances of a just-reported

aggravated robbery give greater weight to the articulable facts known to Officer Moore at the time of the vehicle stop.

Under the totality of the facts and circumstances in this case, we hold Officer Moore had a reasonable suspicion based on articulable facts that the occupants of the vehicle had just committed the liquor store robbery which allowed him to lawfully stop the vehicle. The district court did not err in denying Glass' motion to suppress evidence.

### Sentencing

Glass next contends the inclusion of juvenile adjudications in his criminal history, which were neither prior convictions nor pled and proven to a jury beyond a reasonable doubt, unconstitutionally increased the penalty for his crime beyond the prescribed statutory maximum pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Glass acknowledges this issue has been decided adversely to him in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003); however, he contends this case was wrongly decided.

In *Hitt*, our Supreme Court held: "Juvenile adjudications need not be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the Kansas Sentencing Guidelines Act." 273 Kan. 224, Syl. ¶ 2. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position in *Hitt*. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). We know of no such indication.

The district court did not err in including Glass' juvenile adjudications in his criminal history without submitting them to a jury for proof beyond a reasonable doubt.

Affirmed.