NOT DESIGNATED FOR PUBLICATION

No. 113,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHERMAINE D. WALKER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; PHILLIP B. JOURNEY, judge. Opinion filed July 15, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam:* Shermaine D. Walker appeals her conviction for felony theft. She claims the district court erred in refusing to suppress the evidence of several stolen purses found in the van Walker was riding in. She also complains that the court should have suppressed her post-*Miranda* statement to police. Because the officer had reasonable suspicion to conduct a traffic stop and probable cause to arrest Walker, we hold the district court properly admitted the evidence.

1

*Walker is arrested for shoplifting.*

In January 2014, Officer Matthew Young was dispatched to investigate a theft at a Dillard's store in Wichita. The dispatcher advised Young that several African-American women and perhaps one man had run out of Dillard's carrying some purses. The report stated that they were driving westbound on Kellogg in a gold minivan with a temporary license tag and a hanging handicap placard.

While driving south on Woodlawn to Kellogg to intercept the suspect vehicle, Young saw an approaching gold minivan with a handicap placard in the front window. When the minivan passed Young, he saw that the driver and passenger were African-American. Young turned his patrol car around and pulled behind the minivan at a stoplight. At that point, he saw that the minivan had a 60-day temporary tag. When the stoplight changed and the minivan continued northbound, Young turned on his emergency lights and made a traffic stop.

As Young approached the minivan, he could not see into the back of the vehicle because the windows were tinted. When Young talked with the driver, Alicia Jacobs, he noticed at least one passenger in the backseat and other movement indicating there might be more passengers. Jacobs refused Young's request to turn off the ignition. After Jacobs gave Young her driving license, she was asked again to turn off the ignition. Jacobs placed the minivan in park but did not shut off the vehicle. Young explained to Jacobs he was investigating a larceny report from Dillard's. When asked, Young told Jacobs that she was under arrest. When he opened the door and ordered her to step out of the minivan, Jacobs drove away and a police pursuit started.

Young and several other officers pursued the minivan for a short distance. Once the minivan stopped, four adult African-American women, including Walker, and one juvenile African-American male were ordered out of the vehicle at gunpoint and

2

handcuffed. Walker got out of the minivan through the rear passenger sliding door. Young, through the open sliding door, saw that there were a large number of purses on the floor between two rear captain seats. After Young administered a *Miranda* warning, Walker told Young that she had taken some purses. The 25 purses had a wholesale value of more than $3,000.

The State charged Walker with theft, a severity level 9 nonperson felony in violation of K.S.A. 2013 Supp. 21-5801(a)(1)(b)(3). After her preliminary hearing, Walker filed a motion to suppress all evidence resulting from what she alleged was the illegal stop of the vehicle and subsequent illegal arrest.

At the motion to suppress hearing, Walker contended that Young did not have the requisite reasonable suspicion to conduct the stop and the requisite probable cause to arrest Walker. The State, on the other hand, contended that Young's testimony of the events leading up to him stopping the minivan was enough to show the traffic stop was lawful and the evidence that led to Walker's arrest was in plain view in the minivan after the occupants were apprehended. The district court denied the motion to suppress, finding that the traffic stop was justified as an investigatory stop and there was probable cause to arrest Walker.

The case proceeded to a bench trial on stipulated facts, where Walker objected to the introduction of the evidence seized after the traffic stop to preserve the suppression issue for appeal. The district court found Walker guilty of felony theft. She received a downward durational departure sentence of 12 months in prison.

*The court properly denied the motion to suppress.*

In this appeal, Walker contends the district court erred in denying her motion to suppress. In her view, the facts did not show reasonable suspicion of illegal activity to

3

support a traffic stop. We reject her view because the State has proved the lawfulness of this traffic stop.

Because the material facts to the district court's decision on the motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. See *State v. Stevenson,* 299 Kan. 53, 57, 321 P.3d 754 (2014). Therefore, we must only determine as a matter of law whether the officer's encounter with Walker was supported by reasonable suspicion. In doing so, this court does not reweigh the evidence or reassess credibility. See *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

*The initial stop was legal.*

We consider constitutional principles in this case. The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights guarantee "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007).

A traffic stop is an investigatory detention as originally defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and, thus, always triggers a Fourth Amendment analysis. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991). Kansas has codified the parameters of a permissible *Terry* stop in K.S.A. 22-2402(1), which provides:

> "Without making an arrest, a law enforcement officer may stop any person in a
> public place whom such officer reasonably suspects is committing, has committed or is
> about to commit a crime and may demand . . . the name [and] address of such suspect and
> an explanation of such suspect's actions."

4

The facts reveal that Young's initial contact with the minivan and its occupants was clearly not a voluntary encounter, but rather occurred under a show of authority when Young pulled up behind the minivan with his emergency lights activated and subsequently informed the driver of his intent to investigate a theft. See *State v. Moralez*, 297 Kan. 397, 406, 300 P.3d 1090 (2013). This is different from a voluntary encounter. A seizure by show of authority occurs when the circumstances would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority. See *Moralez*, 297 Kan. at 404 (citing *State v. Morris*, 276 Kan. 11, 18-19, 72 P.3d 570 [2003]). Clearly, the driver's decision not to submit to Young's authority by almost immediately fleeing or attempting to flee prevented a seizure of the vehicle and its occupants under the Fourth Amendment. See *Moralez*, 297 Kan. at 404; *State v. Glass*, 40 Kan. App. 2d 379, 384, 192 P.3d 651 (2008).

The real question here is whether Young, under these circumstances, had a reasonable articulable suspicion that the occupants of the minivan were involved in criminal activity or had committed a crime. Importantly, Young did not have to specifically know that Walker herself was involved in criminal activity to initiate the traffic stop. See *State v. Finley*, 17 Kan. App. 2d 246, 251, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992).

We offer a brief review of the facts. Here, a customer at Dillard's, Angela Maddy, reported the criminal activity to 911. From that information, the dispatcher informed Young (1) the color and model of the vehicle; (2) the approximate direction of the vehicle; (3) the vehicle had a handicap placard and temporary license tag; and (4) several African-Americans were in the vehicle. Young testified he drove to the scene on Woodlawn believing this to be his best chance of intercepting the suspect vehicle travelling northbound. While en route, he encountered a gold minivan with a handicap placard travelling northbound containing two African-Americans in the front. He could not be certain whether there were other people in the vehicle. The windows on the

5

minivan were tinted. Young pulled behind the vehicle at a stop light and then initiated a traffic stop after observing the vehicle also had a 60-day temporary tag. Based on that conduct, the district court found that Young had a reasonable and articulable suspicion to make an investigatory stop.

In considering all of this, Young concluded there was reasonable suspicion to stop the minivan. We examine the quantity and quality of information possessed by the officer. See *State v. Slater*, 267 Kan. 694, 697-99, 986 P.2d 1038 (1999). To do so, we look at (1) the type of tip or informant involved; (2) the detail given about the observed criminal activity; and (3) whether the police officer's personal observations corroborate the information supplied in the tip. *State v. Crawford*, 275 Kan. 492, 497-98, 67 P.3d 115 (2003).

As for the first two *Slater* factors, an identified citizen-informant's tip based on personal observation regarding the details of the criminal activity is high on the scale of reliability. 267 Kan. at 700-02. In examining the third factor, we note, "[a]n officer may corroborate the tip by . . . finding the person and vehicle and the location as substantially described by the informant." 267 Kan. at 703. Important considerations are the time period between the commission of the crime and the officer's observation of the suspect vehicle, coupled with the distance from the crime scene and the location of the stopped vehicle. See *Glass*, 40 Kan. App. 2d at 385-86.

Four factors, considered together, support our finding that Young had a reasonable suspicion based on articulable facts to make the stop.

First, Young acted on information received from a reliable source—Angela Maddy—who provided her contact information and was able to provide first-hand details about the criminal activity and a description of the suspects and getaway vehicle. See *Slater*, 267 Kan. at 697.

6

Second, Young observed the suspect vehicle traveling away from the Dillard's crime scene on a route he knew was connected to Kellogg and that he anticipated the perpetrators might use. See *Glass*, 40 Kan. App. 2d at 385.

Third, Young saw the suspect vehicle not far from the crime scene almost immediately after receiving the dispatch of the just completed larceny. This combination of the short period of time that had elapsed since the larceny and the suspect vehicle's proximity to Dillard's or the crime scene made it probable that the suspect vehicle was one of an extremely limited number of gold minivans that the fleeing perpetrators could occupy. Moreover, Young corroborated the description provided by dispatch when he discovered that the suspect vehicle also had a temporary tag and a handicap placard. See *Slater*, 267 Kan. at 703.

Fourth, Young observed two African-Americans sitting in the front of the suspect vehicle as he drove by. Granted, the dispatcher had reported there were three to five African-American suspects. However, given that the back windows of the suspect vehicle were tinted, it was reasonable for Young to believe that the other suspects might also in the minivan. Moreover, Young was able to ascertain after initiating the traffic stop that there were at least two more passengers in the back of the suspect vehicle. And because Young never seized the occupants of the suspect vehicle at the traffic stop, he could consider this additional information in his assessment of reasonable suspicion. See *Glass*, 40 Kan. App. 2d at 384.

The controlling statute, K.S.A. 22-2402, indicates that the police may stop any person in a public place who is reasonably suspected of committing a crime, of having committed a crime, or about to commit a crime. We can find no error in the district court's legal conclusion that Young had reasonable suspicion to stop the minivan driven by Jacobs.

7

*Walker's arrest was legal.*

We next consider the question whether probable cause supported Walker's warrantless arrest.

A lawful warrantless arrest must be supported by probable cause. K.S.A. 22-2401(c); *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013) (citing *Sloop*, 296 Kan. at 20). Thus, appellate courts determine whether probable cause exists by considering all of the circumstances and do not require that the officer have evidence of every element of a crime to make an arrest. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004).

Walker presents alternative arguments challenging whether Young had sufficient probable cause to make an arrest. Walker's first argument is based on this court finding that Young immediately arrested all of the occupants, including Walker, at the traffic stop instead of investigating whether he had stopped the correct vehicle. To support this factual scenario, Walker points to Young's testimony that he told the driver at the traffic stop she was under arrest and that he considered the remaining occupants were not free to leave.

Young testified he was attempting to arrest the driver of the minivan at the traffic stop because she refused to turn the vehicle off and step out of the vehicle, and he only considered the passengers detained for investigation purposes. As Young clarified at the preliminary hearing, "It would be too early in the investigation, I think, at that point maybe to determine that everybody in that car was under arrest at that point." And given the driver's fateful decision to flee, Young was prevented from completing his

8

permissible investigation. See K.S.A. 22-2402(1). Thus, having already concluded that Young made a valid *Terry* stop, we move to Walker's second argument.

Walker also argues her arrest at the second stop was not supported by probable cause. Walker suggests that nothing had changed between the traffic stop and when the minivan was stopped following the pursuit that would have made Young suspect that she committed the theft at Dillard's. Walker points out that the purses were not found in the minivan until after she "was placed in the police vehicle following her removal at gunpoint and her handcuffing." This argument, like the first, is based on us construing a factual scenario not in the record, *i.e.*, Walker was arrested for the theft of the purses immediately after the pursuit ended.

Once the minivan was stopped following the pursuit, the officers were permitted to take into account their need for protection and order the occupants, including Walker, out of the vehicle at gunpoint and handcuff them. See K.S.A. 22-2402(2); *State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 (2006); *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (1991).

While Walker was lawfully detained on the ground beside the minivan, Young testified he observed "[a] pile of purses" in plain view through the open rear door of the vehicle. A warrantless search is unreasonable unless it falls within one of the recognized exceptions to the search warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Plain view and probable cause to search accompanied by exigent circumstances such as hot pursuit are two such exceptions. 299 Kan. at 239.

Given that Young had a reasonable suspicion to conduct a *Terry* stop, coupled with Jacobs' decision to flee, along with the fact that the number of occupants in the van matched the information provided by the dispatcher, and the purses were in plain view

9

inside the vehicle, Young had probable cause to arrest Walker without a warrant. See *State v. Baker*, 239 Kan. 403, 405, 409, 720 P.2d 1112 (1986).

Since the initial traffic stop and Walker's arrest were legal, we hold that the district court properly denied Walker's motion to suppress.

Affirmed.