NOT DESIGNATED FOR PUBLICATION

No. 119,678

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD BUNGARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed August 16, 2019. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

PER CURIAM: Richard Bungard appeals his convictions for possession of methamphetamine, possession of drug paraphernalia, driving with a suspended license, and operating his vehicle without proof of insurance. On appeal, Bungard contends that the district court erred in denying a motion to suppress evidence. He also contends that there is insufficient evidence in the record to support his conviction for possession of methamphetamine and possession of drug paraphernalia. Finally, he contends that the district court erred in failing to give a nonexclusive possession instruction to the jury. For the reasons set forth in this opinion, we conclude that none of Bungard's contentions have merit. Thus, we affirm.

1

On June 14, 2017, the State of Kansas charged Bungard with possession of methamphetamine, possession of drug paraphernalia, driving with a cancelled, suspended, or revoked license, and operating a motor vehicle without proof of insurance. Prior to trial, Bungard filed a motion to suppress evidence relating to the possession charges. The district court held a hearing over Bungard's motion to suppress on February 9, 2018.

At the hearing, Deputy Eli Norris of the Jackson County Sheriff's Office testified that he initiated a traffic stop of a black Dodge Charger on U.S. Highway 75 on February 9, 2017, at approximately 10:21 a.m. According to Deputy Norris, he believed—based on his training and experience as a law enforcement officer—that the Charger's window tint was darker than the 35% permitted by Kansas law. Although Deputy Norris did not receive "specific training on window tint violations or detection," he testified that he did receive on-the-job field training. Moreover, he testified that he had made somewhere between 10 to 25 window tint traffic stops between 2009 and 2017.

Deputy Norris testified that when he called in the Charger's tag number, the dispatcher reported that the tag belonged to a different vehicle. However, the deputy acknowledged that at some point during the stop this information was corrected after it was noted that the dispatcher had ran an incorrect number. However, at the time he stopped the Charger, Deputy Norris believed that there was a tag violation in addition to a window tint violation.

Deputy Norris indicated that the driver—who identified himself as Richard Bungard—did not have a driver's license. Moreover, a record check revealed that Bungard's license was suspended. According to Deputy Norris, he also requested the driver's insurance information but Bungard was unable to provide it to him.

2

Deputy Norris testified that he used a tint meter to check the tinting on the Charger's windows. In doing so, the tint meter read 28%—which is darker than the 35% permitted by law. The deputy also indicated that Tory Truitt was a passenger in the Charger. However, Truitt also lacked a valid driver's license.

Deputy Norris arrested Bungard for the suspended driver's license and arranged for a tow truck to pick up the Charger because the vehicle was uninsured and neither Bungard nor Truitt could legally drive the car. Deputy Norris testified that he proceeded to "inventor[y] the vehicle per [sheriff's office] policy." While performing the inventory, Deputy Norris found two syringes in the center console with other personal items belonging to Bungard. He also found one syringe on the floorboard behind the driver's seat as well as small plastic baggies throughout the car. The syringe from the floorboard behind the driver's seat was field tested and came back positive for methamphetamine.

Bungard also testified at the suppression hearing. He explained that he had a company in Topeka install the tinting when he purchased the Charger in 2007. According to Bungard, he believed the tint was legal and did not recall Deputy Norris saying anything about the window tint when he initially pulled him over. Rather, he recalled the deputy telling him that his tags were "illegal for [his] car."

After considering the evidence presented at the hearing, the district court found that Deputy Norris stopped Bungard because he believed the tinting on the windows was too dark and he believed there was a tag violation. While the information regarding the tag ultimately was found to have been a mistake, the district court found that Deputy Norris had presented reasonable and articulable reasons for the traffic stop. Further, the district court found that Deputy Norris properly used a tint meter to confirm his suspicions about the window tinting. Accordingly, the district court denied Bungard's motion to suppress.

3

The district court commenced a jury trial on April 3, 2018. At trial, the State presented the testimony of two witness, including Deputy Norris and a chemist from the Kansas Bureau of Investigation. The State also introduced five exhibits into evidence. The State also played the dash-cam video and the video from inside Deputy Norris' patrol vehicle for the jury.

Deputy Norris' testimony was consistent with that given at the suppression hearing. In addition, the deputy testified regarding his department's policy requiring that an inventory of seized vehicles be conducted and that any property valued at more than $200 be catalogued. Although he did not recover any valuables worth more than $200, Deputy Norris testified regarding the evidence found during the inventory search. The chemist from the Kansas Bureau of Investigation testified that the syringe found on the floorboard behind the driver's seat tested positive for methamphetamine.

At the close of the State's evidence, Bungard's counsel renewed his motion to suppress and moved for acquittal. The district court denied both motions. Bungard then testified in his own defense. According to Bungard, he purchased the syringes discovered in the center console from a Walgreens store because he suffers from diabetes and can become light-headed. He indicated that he self-administered insulin shots and that the syringes were in the console in case of a medical emergency.

Bungard testified that he never carries insulin with him. In the event of an insulin emergency, Bungard asserted that he would purchase insulin from the same Walgreens from which he purchased the syringes. While discussing his need for insulin, Bungard testified that he didn't "shoot up" while in the car. On cross-examination, Bungard agreed that he just "picked up that terminology" from television.

4

While Bungard agreed that the needles in the center console were his, he denied that the needle found in the driver's side rear floorboard—which subsequently tested positive for methamphetamine—belonged to him. He stated that he would not have kept a needle on the floor of the car and that he did not know it was there. According to Bungard, he purchased the baggies to store "nuts and bolts . . . and washers," and could only purchase a package of 200 units.

The jury ultimately convicted Bungard on all four counts. Subsequently, he filed a motion for a new trial as well as a motion for a downward departure. Bungard also motioned for acquittal. On May 25, 2018, the district court held a hearing on the pending motions. The district court denied all of the motions with the exception of the motion for a downward departure.

Although the district court denied Bungard's motion for a dispositional departure, it granted him a durational departure and sentenced him to 30 months of incarceration for the possession of methamphetamine conviction. The district court imposed a sentence of 12 months for possession of drug paraphernalia, 12 months for driving while suspended, and 6 months for driving without insurance. The district court then ordered all of the sentences to run concurrently.

Thereafter, Bungard timely appealed.

ANALYSIS

Bungard raises three issues on appeal. First, Bungard contends that the district court erred when it denied his motion to suppress. Second, Bungard contends that the State presented insufficient evidence to convict him of possession of methamphetamine and possession of drug paraphernalia. Third, Bungard contends that the district court

5

erred when it failed to give an instruction regarding nonexclusive possession of the methamphetamine and drug paraphernalia found in his car.

*Denial of Motion to Suppress*

Bungard argues that the district court erred in denying his motion to suppress the evidence because the traffic stop and subsequent inventory search was illegal. Specifically, Bungard suggests that neither the tint of the windows on his automobile nor the belief that he was using improper tags were sufficient reasons to support the stop. Alternatively, Bungard suggests that even if the stop was proper, the inventory search was illegal.

Our standard of review of a district court's decision on a motion to suppress involves two elements. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. However, we review the district court's ultimate legal conclusion using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence nor do we assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

As the State correctly points out, Bungard failed to timely object at trial to the admission of the evidence he had sought to suppress. "When the trial court has denied a motion to suppress, the moving party must object to the introduction of that evidence *at the time it was offered at trial* to preserve the issue for appeal." (Emphasis added.) *State v. Hernandez*, 294 Kan. 200, 212, 273 P.3d 774 (2012). Although Bungard's counsel had indicated prior to trial that he would make a contemporaneous objection at the bench prior to trial, he failed to do so. It does appear from the record that counsel did attempt to belatedly object after the State rested its case. Thus, because Bungard did not object at the time the evidence was offered at trial, we find that he has failed to preserve this issue for appeal.

6

Regardless, even had Bungard made a contemporaneous objection, we find that his argument would still fail. Specifically, we find that the window tint violation provided a valid basis for the traffic stop. Likewise, we find that under the circumstances presented, the inventory search prior to the deputy releasing the car to be towed was also appropriate.

While Bungard acknowledges that Deputy Norris was ultimately correct in suspecting that his window tint violated K.S.A. 2018 Supp. 8-1749a, he argues that "Deputy Norris' belief before the stop that the tint was too dark was nothing more than a guess." "A traffic stop is a seizure under the purview of the Fourth Amendment." *State v. Brewer*, 49 Kan. App. 2d 102, 108, 305 P.3d 676 (2013). To properly stop a vehicle, a police officer must have a reasonable suspicion that a law is being violated and that suspicion must be based upon articulable facts. *State v. Kraemer*, 52 Kan. App. 2d 686, 691-92, 371 P.3d 954 (2016).

"Whether reasonable suspicion exists is a question of law." *State v. Lowery*, 308 Kan. 359, 364, 420 P.3d 456 (2018). "The burden to prove the legality of a challenged search or seizure rests on the State." *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018). An officer's observation of a traffic violation can serve as the basis for reasonable suspicion to stop a vehicle. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007).

K.S.A. 2018 Supp. 8-1749a concerns sun screening devices, such as window tinting. It provides in relevant part:

> "(a) No motor vehicle required to be registered in this state and which is operated on the highways of this state shall be equipped with one-way glass or any sun screening device, as defined in K.S.A. 8-1749b, and amendments thereto, and used in conjunction with windshields, side wings, side windows or rear windows that do not meet the following requirements:
> . . . .

7

(3) the total light transmission shall not be less than 35% when a sun screening device is used in conjunction with other existing sun screening devices." K.S.A. 2018 Supp. 8-1749a(a)(3).

Bungard cites no authority in support of his argument that traffic stops "based on illegal window tint [are] not reasonable because judging the tint's darkness is simply a guess." Despite Bungard's argument to the contrary, this court has held that an officer's observations concerning a vehicle's window tint can provide the reasonable suspicion required for a traffic stop.

In *State v. Kirk*, 40 Kan. App. 2d 817, 196 P.3d 407 (2008), a criminal defendant argued that an officer needed some form of specialized training to detain individuals for window tint violations. Our court disagreed and held that "the officer had reasonable grounds to stop [the defendant's] vehicle based solely on reasonable suspicion of violation of the window-tint statute." 40 Kan. App. 2d at 819-20. In fact, several panels of our court have held that reasonable suspicion of a window tint violation may provide a basis for a traffic stop. See *Brewer*, 49 Kan. App. 2d at 109 ("This argument fails because either [excessive window tint or an altered tag] provided an objectively valid reason for [the officer] to make the traffic stop."); *State v. Llamas*, No. 105,832, 2012 WL 1072763, at *3 (Kan. App. 2012) (unpublished opinion) ("Reasonable suspicion does not require [the officer] to know that [the driver's] window tint fell below the statutory minimum transparency. [The officer] merely was required to have a reasonable suspicion that a law was being violated in order to effectuate the traffic stop."); see also *State v. Ojiaka*, No. 108,231, 2012 WL 6634440, at *3 (Kan. App. 2012) (unpublished opinion).

Here, Deputy Norris' testimony provided a reasonable and articulable suspicion to justify a traffic stop for a window tint violation based on his training and experience as a law enforcement officer. In particular, the record reflects that Deputy Norris testified that he observed Bungard's vehicle and believed the window tinting to be too dark. Moreover,

8

the deputy testified that his observations were based upon his past experience and field training to operate a tint meter device. As indicated above, it is undisputed that Bungard's suspicions were ultimately confirmed. Thus, based on the evidence in the record, we find that Deputy Norris' suspicions were not "simply a guess" but were reasonable under the circumstances presented.

Reasonable suspicion does not require absolute knowledge that a crime occurred or is occurring. *State v. Glass*, 40 Kan. App. 2d 379, Syl. ¶ 2, 192 P.3d 651 (2008). Indeed, reasonable suspicion inherently involves some level of assumption based upon observed articulable facts. See *Llamas*, 2012 WL 1072763, at *1-2. Accordingly, we find that there is substantial competent evidence in the record to support the district court's determination that Deputy Norris articulated a reasonable suspicion of a window tint violation. As a result, we conclude the district court did not err in finding that the initial stop was legal.

Bungard also argues that the dispatcher's report that Bungard's tags belonged to a different vehicle could not serve as a valid basis for the stop. It is undisputed that during the traffic stop this information was found to be mistaken. Nevertheless, it is not necessary for us to reach this argument because even if Deputy Norris lacked sufficient reasonable suspicion based on the mistaken tag violation, the window tint violation provided an independent and sufficient basis for the stop. See *Brewer*, 49 Kan. App. 2d at 108-09.

Next, Bungard argues that the inventory search was unreasonable because he offered to tow his vehicle at his own expense. Specifically, Bungard argues that because he "not only had a means to have the vehicle towed at his expense, but also asked to have it towed at his expense, there was no basis for the State to take custody of the vehicle and then conduct an inventory search." It is undisputed that Bungard offered on several occasions to have his car towed and that Deputy Norris denied his requests.

9

A warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Those exceptions include: consent; search incident to lawful arrest; stop and frisk; probable cause with exigent circumstances; emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses. 299 Kan. at 239. Accordingly, the inventory search of a lawfully impounded vehicle is an exception to the warrant requirement. See *State v. Teeter*, 249 Kan. 548, Syl. ¶¶ 1, 2, 819 P.2d 651 (1991).

Under Supreme Court precedent "[t]he decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable." *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). An inventory search protects "the owner's property while in police custody, protecting against claims or disputes over stolen or lost property, and guarding police from potential danger." *State v. Linden*, No. 118,252, 2019 WL 986183, at *3 (Kan. App. 2019) (unpublished opinion); see also *State v. Branstetter*, 40 Kan. App. 2d 1167, 1170, 199 P.3d 1272 (2009). To serve this limited purpose, a law enforcement officer may not use an inventory search as a "'ruse for general rummaging in order to discover incriminating evidence.'" *Linden*, 2019 WL 986183, at *3; see also *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990).

To perform an inventory search, the police must "first obtain lawful custody of the vehicle." *Linden*, 2019 WL 986183, at *3. In the absence of a statute or an ordinance, the State must prove reasonable grounds for impoundment of a vehicle. These reasonable grounds are viewed under the totality of the circumstances. *Linden*, 2019 WL 986183, at *3. Our Supreme Court articulated a nonexhaustive list of grounds where impoundment of a vehicle is reasonable:

"'the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; [or] (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture.'" 2019 WL 986183, at *3 (quoting *Teeter*, 249 Kan. at 552).

In *Linden*, a criminal defendant claimed on appeal that an "'arrest does not give the highway patrol the ability to impound the car and do an inventory search. Neither does the failure to find liability insurance, without further inquiry, allow for said impoundment and search.'" 2019 WL 986183, at *3. The State argued that because the defendant's driver's license was suspended, the driver lacked insurance, and the vehicle's plate was expired, it was not lawful to operate the vehicle. On appeal, this court explained that the officer had two bases for impounding the vehicle—statutory authority under K.S.A. 8-1570(c)(3) and the reasonableness test. 2019 WL 986183, at *4.

The *Linden* panel noted that K.S.A. 8-1570(c)(3) provides a statutory basis for impoundment and inventory searches. 2019 WL 986183, at *4. That statute provides that law enforcement officers are "authorized to remove . . . any vehicle found upon a highway when . . . the person driving . . . such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without necessary delay." K.S.A. 8-1570(c)(3). Likewise, the *Linden* panel found that it was reasonable under the totality of the circumstances to do so. 2019 WL 986183, at *4. The panel explained that because the driver was arrested for driving on a suspended license, "there was no one present to remove or lawfully park the vehicle" and therefore the vehicle was unattended. 2019 WL 986183, at *4.

11

Further, the *Linden* court found that "an officer is not required to consult a defendant about the disposition of the vehicle. Whether an impoundment is lawful in a case is based upon the totality of the circumstances, not whether the defendant was consulted about the car's disposition." 2019 WL 986183, at *5. The panel added:

> "'The first question arising is whether under the Fourth Amendment, a police officer must give a driver who is competent of making a rational disposition of the vehicle, the opportunity to make that disposition in order to justify impoundment. *The answer to this question is no.* What is required under the Fourth Amendment is that the impoundment be reasonable under the totality of circumstances. The officer's inquiry of the driver regarding disposition is but one of the circumstances that is considered in the court's determination of whether the impoundment is reasonable.'" 2019 WL 986183, at *5 (quoting *State v. Shelton*, 278 Kan. 287, 293, 93 P.3d 1200 [2004]).

The *Linden* panel reiterated that the officer's actions were reasonable under the totality of the circumstances because (1) the defendant was under arrest; (2) the defendant's license was suspended; (3) the driver lacked insurance; (4) the vehicle's license plate was expired; and (5) there was no passenger that could lawfully operate the vehicle. Finally, this court upheld the inventory because the officer performed the inventory in compliance with Kansas Highway Patrol policy and Kansas statute. 2019 WL 986183, at *5; see K.S.A. 2018 Supp. 8-262(a)(1).

A review of the record in this case reveals that Deputy Norris had the authority to tow the vehicle. First, the deputy could move Bungard's vehicle under K.S.A. 2018 Supp. 8-1570(c)(3) after he arrested Bungard for driving with a suspended driver's license. Second, Deputy Norris had reasonable grounds under the totality of the circumstances to have the car removed from the scene of the traffic stop. Here, Bungard was arrested for driving on a suspended license and neither he nor the passenger could lawfully remove or park the vehicle. In fact, because the vehicle was uninsured *no person* could legally drive the vehicle. Furthermore, Deputy Norris testified regarding his department's policy for

conducting inventory searches. Thus, we conclude that under the totality of the circumstances, Deputy Norris had reasonable grounds for both having the vehicle towed from the scene of the traffic stop and to conduct an inventory search prior to having the vehicle removed. See *Linden*, 2019 WL 986183, at *5.

In *Linden*, this court also held a law enforcement officer "is not required to consult a defendant about the disposition of the vehicle." 2019 WL 986183, at *5. Similarly, our Supreme Court has found that a law enforcement officer is not required to allow an arrested driver to determine the disposition of the vehicle. *Shelton*, 278 Kan. at 293. Because Deputy Norris' actions were reasonable under the circumstances presented and he had no obligation to consult with Bungard regarding the disposition of his car after arrest, we conclude that the inventory search was valid. Therefore, we affirm the district court's decision not to suppress the evidence relating to the possession of methamphetamine and possession of drug paraphernalia.

*Sufficiency of the Evidence*

Bungard also contends that the State failed to present sufficient evidence at trial upon which a jury could have found him guilty of possession of methamphetamine and possession of drug paraphernalia. He argues that "[e]ven though [the syringes were] found in his car, with a passenger present, the State needed to produce more evidence to tie [Bungard] to the drugs." Citing to *State v. Rios*, 19 Kan. App. 2d 350, 357-58, 869 P.2d 755 (1994), Bungard suggests that there was simply "an inference that [Bungard] possessed the drugs because he was closest" to them.

In reviewing the record to determine whether sufficient evidence was presented at trial, we must view the evidence in a light most favorable to the State. Only if we are convinced that a rational fact-finder could not have found a defendant guilty beyond a reasonable doubt should we set aside a jury verdict. Moreover, in reviewing the record,

13

we do not reweigh evidence or make credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is important to recognize that a verdict may be supported by circumstantial evidence. In order to be sufficient, the evidence need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). Rather, a conviction of even the gravest offense can be based entirely on circumstantial evidence. 304 Kan. at 25.

Possession means to have "control over a . . . thing with knowledge of and the intent to have such control." *State v. Boggs*, 287 Kan. 298, 312, 197 P.3d 441 (2008). Possession may be established by exclusive control, joint control with another person, or constructive control as where the item is kept in a place over which the defendant has access and a right of control. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009). Constructive possession may be established by circumstantial evidence. 41 Kan. App. 2d at 129.

Our court has addressed constructive possession in several cases. In *State v. Fitzpatrick*, No. 115,847, 2017 WL 383438, at *3 (Kan. App. 2017) (unpublished opinion), this court recognized that "[t]o establish a defendant's constructive possession of drugs, the State must prove more than a 'mere presence or access to the drugs'" but requires "'other incriminating circumstances.'" See also *State v. Sharpnack*, No. 113,959, 2017 WL 2001601, at *7 (Kan. App. 2017) (unpublished opinion); *State v. Siebold*, No. 101,687, 2010 WL 1882148, at *4-8 (Kan. App. 2010) (unpublished opinion). Our review of the record on appeal in this case reveals that the State presented sufficient evidence in addition to the mere presence or access to drugs.

Here, viewing the evidence in the light most favorable to the State, we find evidence establishing that Bungard owned the Charger where the methamphetamine and

14

syringes were found. Two of the syringes—which were of the type commonly used to ingest methamphetamine—were found in the center console amongst Bungard's other personal belongings. Bungard admitted that he owned those two syringes and purchased similar supplies from Walgreens regularly. Although he claimed to use them because of a diabetic condition, no insulin was found in the car and Bungard testified that he only bought it as needed. In referring to the syringes, Bungard used the term "shoot up"—a term commonly associated with illegal drug use—when talking about insulin injections. Further, Deputy Norris found another syringe of the same type on the floorboard directly behind the driver's seat in which Bungard was sitting. This syringe was found to contain methamphetamine and was in plain view.

Consequently, we find that the jury here had a sufficient basis to conclude that Bungard exerted control over the methamphetamine and drug paraphernalia such that it was in his constructive possession. See *Fitzpatrick*, 2017 WL 383438, at *3; *Siebold*, 2010 WL 1882148, at *8. In addition, we find that there is sufficient evidence in the record on which the jury could convict Bungard of possession of methamphetamine and possession of drug paraphernalia beyond a reasonable doubt.

*Nonexclusive Possession Instruction*

Finally, Bungard contends that although the district court gave the jury a general possession instruction, it should have also given a nonexclusive possession instruction because there were two people present in the car in which the methamphetamine and drug paraphernalia was found. In determining whether a jury instruction should have been given by the district court, we first determine if the issue has been preserved for appeal. We next consider the merits of the claim including whether the instruction was legally and factually appropriate. Then, we assess whether the error requires reversal. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Here, it is undisputed that Bungard failed to object at trial. Under K.S.A. 2018 Supp. 22-3414(3), "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." Under a clear error standard of review, we are only to reverse the district court if we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error—in this case Bungard—has the burden to demonstrate prejudice. *McLinn*, 307 Kan. at 318.

Instruction 8 given by the district court to the jury at trial stated:

> "'Possession' (as used in instructions 7 and 8) means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

Although Instruction 8 was appropriate, Bungard argues that the district court should have also given a nonexclusive possession instruction. Moreover, the State candidly agrees that an "instruction on nonexclusive possession would have been legally and factually appropriate" in this case. Rather, the State claims that "failure to give such instruction was not clear error." The State asserts that it presented enough evidence at trial that even had a nonexclusive possession instruction been given, the jury would not have changed its verdict. We agree.

Bungard fails to meet his burden to show that the jury's verdict would have differed with the inclusion of a nonexclusive possession instruction. As previously discussed, the State presented sufficient evidence to support a conviction on both the possession of methamphetamine and possession of drug paraphernalia charges. This evidence included the fact that (1) Bungard owned the vehicle and was in the driver's seat; (2) Deputy Norris found syringes in the center console with Bungard's personal

16

belongings; (3) Bungard admitted that he purchased and owned identical syringes; (4) Bungard referred to using a syringe as "shooting up"; (5) the syringe located directly behind Bungard in close proximity contained methamphetamine; and (6) the syringe containing methamphetamine was plainly visible.

During closing arguments, Bungard's attorney presented a theory to the jury that the methamphetamine belonged to Truitt, based off Truitt's recent conviction for methamphetamine possession:

> "What makes more sense, that a guy ditches a needle because he's on bond for a drug case and deputies are standing outside the door, or that . . . Bungard had this needle that he kept somehow magically separated from these other needles in the console and left it free to roll around the floor of the car while he drove around? So there's absolutely some reasonable doubt here on whether or not . . . Bungard possessed both the methamphetamine and drug paraphernalia."

The jury rejected this defense and convicted Bungard.

Although a nonexclusive possession instruction would have been both legally and factually appropriate in this case, we do not find the failure to give the instruction to be clearly erroneous based on our review of the record. Because Bungard failed to object at trial, he must firmly convince us that the jury's verdict would have differed with the nonexclusive possession instruction. He has not done so. Instead, we find the circumstantial evidence tending to establish Bungard's guilt to be quite strong. Accordingly, we do not find that Bungard was prejudiced by the failure to give a nonexclusive possession instruction.

Affirmed.

17