(838 P.2d 904)

No. 66,658 ■

STATE OF KANSAS, *Appellant,* v. DONALD E. FINLEY, *Appellee.*

Opinion filed April 10, 1992.

*Thomas J. Bath* and *Robb Edmonds,* assistant district attorneys, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for appellant.

*Joseph L. Dioszeghy,* of Overland Park, for appellee.

Before BRISCOE, C.J., ELLIOTT and PIERRON, JJ.

PIERRON, J.: On Sunday, November 11, 1990, at approximately 12:28 p.m., Lenexa, Kansas, police officers were dispatched to the Days Inn Motel in Lenexa, Kansas, Johnson County. The dispatch was to Room 350 of the motel where a woman had been heard screaming for help. Three officers responded to the dispatch: Officer Sarah (Keating) Vogelsberg was the first to arrive. Officer Rusty James arrived shortly thereafter. The last to arrive was Officer Marc Halvorson.

As he arrived on the scene, Halvorson noticed a white male in a blue Thunderbird approaching what Halvorson knew to be the only exit from the motel parking lot. The other two officers had already driven toward Room 350 to investigate the reported disturbance. Halvorson noticed that other than the marked police cars, the Thunderbird was the only vehicle moving in the parking lot. There was also testimony that the individual in the car "stared at" the officer. Halvorson followed the Thunderbird since he "believed that it might be the suspect vehicle."

Halvorson followed the Thunderbird for about six-tenths of a mile and then decided to stop it. As to what took place while Halvorson followed the Thunderbird, the parties differ.

It is undisputed that after he stopped the vehicle, Halvorson asked the defendant what had happened at the motel. The defendant answered that he and his girlfriend had a fight because he thought she had been sleeping with his best friend.

Officer James arrived at the scene and told Halvorson they had received enough information to link the occupant of the car to the disturbance at the motel. Finley was placed under arrest. The search of his person revealed a vial of cocaine. It was also found that Finley was driving with a suspended driver's license. Officer James testified he saw what appeared to be seeds on the passenger's seat. He conducted a search of the trunk where he found a quantity of hypodermic needles (syringes). He proceeded to look under the hood where three bags of marijuana were found.

Finley was charged with six counts: Count I—Battery; Count II—Criminal Damage to Property (for damage at the Days Inn Motel); Count III—Driving With a Suspended License; Count IV—Possession of Drugs with Intent to Sell; Count V—Possession of Drug Paraphernalia; and Count VI—Possession of Cocaine. Counts I and II were later dismissed.

The defendant filed a motion to suppress the evidence of the drugs and drug paraphernalia, alleging that they were illegally obtained. In particular, he claimed that the stop of his automobile was not supported by a reasonable suspicion that criminal activity had occurred. After two hearings the trial judge granted the defendant's motion and suppressed the evidence. This is the State's interlocutory appeal of the trial court's suppression of the evidence.

A great deal of the time spent by the parties at the hearings was devoted to the issue of what information was relayed to Halvorson by the other two officers prior to stopping the vehicle. The trial court found after an analysis of the admittedly confusing and contradictory testimony that. Halvorson received no information from the other officers prior to making the stop. The court then found there was insufficient information available to the officer to justify the stop when it occurred.

We find that although we accept the trial court's reading of that evidence, there was sufficient information available to the officer to justify a car stop under these facts.

The trial court is to determine the reasonableness of a search based upon the facts and circumstances unique to that case. *State v. McKeown,* 249 Kan. 506, 514, 819 P.2d 644 (1991) (citing *State v. Kirby,* 12 Kan. App. 2d 346, 353, 744 P.2d 146 [1987], *aff'd* 242 Kan. 803, 751 P.2d 1041 [1988]). In reviewing a trial court's decision, an appellate court must consider whether the findings of the court on the motion to suppress are based upon substantial evidence. *McKeown,* 249 Kan. at 514. Substantial evidence is described as:

" 'evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 172, 630 P.2d 1131 (1981); see *Williams Telecommunications Co. v. Gragg,* 242 Kan. 675, 676, 750 P.2d 398 (1988). An appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court and must disregard any conflicting evidence or other inferences that might be drawn therefrom." *Lansing-Delaware Water District v. Oak Lane Park, Inc.,* 248 Kan. 563, 572-73, 808 P.2d 1369 (1991) (citing *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.,* 241 Kan. 241, 244, 736 P.2d 882 (1987).

Before touching upon the reasonableness of the search involved in the case at hand, we must first determine whether the stop of the defendant's vehicle was lawful. The law governing the stop involved in this case is found at K.S.A. 1991 Supp. 22-2402(1):

"Stopping of suspect. (1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may

demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

The statute is a codification of the rule governing a stop and frisk under the United States Supreme Court case of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The Kansas Supreme Court recently discussed this statute in *State v. McKeown*, 249 Kan. at 509. In *McKeown*, the court noted that even if a law enforcement officer does *not* have the requisite reasonable suspicion to conduct a *Terry* stop, he may still approach an individual on the street for investigative purposes. The officer may request identification of the individual, who must be free to leave. 249 Kan. at 509 (citing *State v. Epperson*, 237 Kan. 707, 713, 703 P.2d 761 [1985], and *State v. Marks*, 226 Kan. 704, 708-09, 602 P.2d 1344 [1979]).

An officer is not, however, afforded this opportunity if the individual is in a moving vehicle. The court held that the stop of a *vehicle* pursuant to K.S.A. 22-2402 always constitutes a seizure. *McKeown*, 249 Kan. at 510. "Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry*." 249 Kan. at 510. The court continued, "[t]o stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of 'specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the vehicle contains individuals involved in criminal activity." 249 Kan. at 510.

At the motion to suppress hearing, the defense contended Officer Halvorson did not have the requisite reasonable suspicion based on facts known prior to the stop in order to conduct the stop. The State, on the other hand, contended Officer Halvorson's testimony of the events leading up to his following and stopping the vehicle was enough to create a reasonable suspicion that the occupant in the car was involved in the disturbance at the motel.

The arguments may only be resolved with a determination of what "reasonable suspicion" means in modern day law. Reasonable suspicion is not the same as probable cause. In *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989), the Court conducted a thorough examination into the meaning of reasonable suspicion. The Court stated:

"The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' [Citation omitted.] The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. [Citation omitted.] That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' [citation omitted] and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." 490 U.S. at 7.

In *Alabama v. White,* 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), the United States Supreme Court expounded on the differences between reasonable suspicion and probable cause:

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture' (citation omitted) that must be taken into account when evaluating whether there is reasonable suspicion."

See also *State v. Hayes,* 3 Kan. App. 2d 517, 597 P.2d 268, *rev. denied* 226 Kan. 793 (1979), for a discussion of the distinction between probable cause and reasonable suspicion.

Therefore, whether the stop in the case at hand was lawful depends on Officer Halvorson's ability to point to specific articulable facts which reasonably create a suspicion that the occupant of the vehicle had committed a crime. Inchoate and unparticularized suspicion or hunches will not suffice.

The dispatch to the motel was the result of a report by an unknown informant that there was a woman screaming for help in Room 350. Officer Halvorson testified that he was the third law enforcement officer to arrive on the scene. As he entered what he knew to be the only entrance and exit to the motel parking lot, he saw one moving automobile, a blue Thunderbird. Officer Halvorson, a six and a half year veteran with the Lenexa Police Department, testified that he suspected that the person in the automobile was involved in the reported incident. He,

therefore, decided to follow the vehicle. He followed the vehicle for approximately six-tenths of a mile before pulling it over by activating his red lights. All of the events leading up to the stop and attendant search, coupled with the fact that Officer Halvorson had been with the Lenexa Police Department for over six years, created enough suspicion to alert a reasonable person that the individual in the car might have committed a crime.

It is important to remember that this is all that is necessary—the law enforcement officer does not have to *know* that the defendant committed a crime. Merely pointing to some facts that would cause a reasonable person to be suspicious is enough to conduct a *Terry* stop.

Once the blue Thunderbird was stopped, Halvorson asked the occupant of the car what had happened at the motel. He determined that the individual was definitely involved in the disturbance since the defendant explained that he and his girlfriend had been in a fight.

The State cites several Kansas cases which uphold a finding of reasonable suspicion. The defendant claims these cases are easily distinguishable from the present case since the law enforcement officers had more articulable facts to support a reasonable suspicion. Among these are *State v. Baker*, 239 Kan. 403, 720 P.2d 1112 (1986) (officers knew that suspects were two black men dressed in black jackets and blue jeans; the totality of the circumstances—"the whole picture" held determinative); *State v. Bailey*, 247 Kan. 330, 799 P.2d 977 (1990) (officers knew that suspect was black male wearing yellow baseball cap, suspect looked nervously at officers; although facts known were sketchy, the need for immediate action played a large role), *cert. denied* ___U.S. ___, 114 L. Ed. 2d 108 (1991); *State v. Potter*, 246 Kan. 119, 785 P.2d 989 (1990) (officers knew that suspects were two men in camouflage suits with black greasepaint on their faces).

These cases may involve more articulable facts than the case at hand. This does not mean that there are not articulable facts in the case at hand. From the undisputed facts available, we find as a matter of law that Officer Halvorson had sufficient articulable facts to justify the stop.

Since the court suppressed the evidence on the basis of an illegal stop, the matter is remanded to the trial court for further

consideration of whether, assuming a lawful stop was made, the subsequent search was justified under the facts, and for any other appropriate proceedings.

Reversed and remanded.