NOT DESIGNATED FOR PUBLICATION

No. 113,759

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALICIA D. JACOBS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed October 7, 2016. Affirmed.

*James T. McIntyre*, of Law Offices of James T. McIntyre, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL, J., and BURGESS, S.J.

*Per Curiam*:  Claiming there is insufficient evidence to find her guilty, Alicia D. Jacobs asks us to overturn her felony convictions for theft and attempting to elude a police officer. She also contends there was no good reason for the police to stop her van and the subsequent search of her vehicle was illegal. In addition, Jacobs raises claims about the improper admission of some photographs and a pleading error by the State. Because our review of the record reveals sufficient evidence to convict her, the search of her van was legal, and the claimed trial errors are insignificant, we affirm her convictions.

1

*Reports of shoplifting and a van leaving a mall lead an officer to stop a van.*

In January 2014, while shopping at Dillard's in Wichita, Angela Maddy saw four individuals running through the glass doors of the store with handbags hanging on their arms. Maddy followed the individuals outside of the store and called 911. She saw a minivan back out of its parking stall very quickly, the individuals with the purses got into the minivan, and the minivan left the parking lot. Maddy described the minivan and the direction it was going to the 911 operator.

Officer Matthew Young headed toward the store to investigate the theft at Dillard's. The dispatcher advised Young that three or four African-American women had taken some purses. The report stated that they were driving westbound on Kellogg in a gold minivan with a temporary license plate and a hanging handicap placard.

While driving south on Woodlawn toward Kellogg, Young saw an approaching gold minivan with a handicap placard hanging from the rear-view mirror. He saw that the driver and front passenger were African-American. The minivan passed him heading northbound on Woodlawn. Young turned his patrol car around and pulled behind the minivan. At that point, he saw that the minivan had a 60-day temporary tag. Young turned on his emergency lights and made a traffic stop.

As Young approached the minivan, he could not see clearly into the back of the vehicle because the windows were tinted. When standing at the driver's door, he noticed at least one passenger in the backseat. Young identified Jacobs as the driver. After Jacobs gave Young her driving license, Young explained to Jacobs he was investigating a theft from Dillard's. Young asked Jacobs to turn off the ignition. Jacobs placed the minivan in park but did not shut off the vehicle. Young again asked her to shut the minivan off, and she again refused. Young opened the door and asked her to step out of the minivan. When asked, Young told Jacobs that she was under arrest and ordered her to step out of the

minivan. Jacobs then drove away, and a police pursuit started involving Young and several other officers.

Officer Bart Brunscheen was the first car in the pursuit. He turned on his lights and siren and pursued the minivan in a marked police vehicle. Brunscheen saw the minivan commit several traffic violations. The minivan ran a stop sign, ran a red light, failed to turn into the immediate left lane when making a left turn, changed lanes without signaling, sped, and failed to signal a turn.

Once the minivan stopped, Brunscheen opened the driver's door with his gun drawn. Jacobs stated that she had never gone inside the store and did not take anything. All the occupants of the minivan were taken out of the vehicle at gunpoint and handcuffed. At that point, the sliding doors on both sides of the van were open. Young, through the open sliding door, saw that there were numerous purses with price tags on them on the floor between the two rear captain seats.

Young removed each of the purses and took photographs of them. At trial, Young identified exhibits 2 through 18 as the photographs he had taken of the purses found in the van. Young testified that the photos accurately depicted the condition of the purses when he first saw them. The State moved to admit the photographs, and the defense objected only based on its motion to suppress.

After her arrest, Officer David Atkins took custody of Jacobs at the scene. Atkins advised Jacobs of her *Miranda* rights. Jacobs told him that she had just been waiting for her friends outside the store and did not know what had happened inside the store. She stated that she ran from the police because she got scared.

The State charged Jacobs with felony theft and felony fleeing or attempting to elude an officer. The complaint alleged that Jacobs committed five or more moving

violations when attempting to elude an officer, but it did not specify what moving violations were committed.

*The court refused to suppress the evidence from the search of the van.*

The court combined its hearing on Jacobs' motion to suppress with a bench trial. The court found that the officer saw a vehicle matching the description of the suspect vehicle soon after the theft. The officer had a reasonable articulable suspicion to conduct an investigatory stop of the vehicle. The court found that once the occupants were removed from the vehicle at gunpoint and arrested, the search of the vehicle was lawful under several exceptions to the search warrant requirement: plain view, search incident to arrest, probable cause, and as an inventory search.

At trial, the security video from the store showed the individuals come in, grab the purses, and then immediately run out of the store. Maddy and the officers testified as set out above. From this, the court found that there was evidence beyond a reasonable doubt that Jacobs "was clearly the driver of the getaway vehicle and that she aided and abetted or assisted in the felony theft of the purses in concert with the other individuals that ran from the store without paying for the merchandise." The court also found there was proof beyond a reasonable doubt that Jacobs committed the crime of felony fleeing or attempting to elude an officer. The court adjudged her guilty of both crimes. She was sentenced to a 13-month prison term with probation granted.

Jacobs filed a timely notice of appeal of "this Criminal matter to the *Supreme Court* of the State of Kansas." (Emphasis added.)

*We will not dismiss this appeal due to defects in the notice of appeal.*

The State contends that Jacobs' notice of appeal was defective and this court lacks jurisdiction because (1) it specified the Kansas Supreme Court rather than the Kansas Court of Appeals; and (2) it did not specify what judgment or part thereof Jacobs sought to appeal. Jacobs did not reply.

A review of appellate law is useful here. Kansas appellate courts obtain jurisdiction over the rulings identified in the notice of appeal. *State v. Coman*, 294 Kan. 84, 90, 273 P.3d 701 (2012). The statute dealing with this—K.S.A. 2015 Supp. 60-2103(b)—provides that "[t]he notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." Our Supreme Court has explained we are to construe notices of appeal in order to do justice:

> "We liberally construe K.S.A. 60-2103(b) "'to assure justice in every proceeding,"'
> [Citations omitted]; but there is still a substantive minimum below which a notice cannot
> fall and still support jurisdiction." *State v. Laurel,* 299 Kan. 668, 673, 325 P.3d 1154
> (2014).

The court recently reiterated this rule in *Fuller v. State*, 303 Kan. 478, 492-93, 363 P.3d 373 (2015). Because a notice of appeal need not be overly technical or detailed, the courts generally consider whether the State has been prejudiced by a timely, but otherwise defective notice of appeal. *Laurel*, 299 Kan. at 674.

Jacobs' pro se notice of appeal correctly identified the parties and district court case number. But the text of the notice stated: "Defendant Alicia Jacobs would like to appeal this Criminal matter to the Supreme Court of the State of Kansas." Jacobs named

the wrong appellate court and broadly identified "this Criminal matter," as opposed to specific judgments she sought to appeal.

As in *Laurel*, there has never been any confusion about which court should hear this appeal and the State has not shown us any prejudice from Jacobs' mistake of naming the Supreme Court instead of the Court of Appeals. This error certainly provides no reason to dismiss her appeal.

The State's second point is more meritorious. The State argues it was prejudiced by Jacobs' failure to identify specific judgments she wanted to appeal from because it was forced to hit a moving target. We examine this with a practical eye. By the time the State had to file its brief, it had the benefit of Jacobs' brief and the docketing statement filed by her. The issues were framed in those documents.

Given that the notice of appeal should not be overly technical or detailed, see *State v. Wilkins*, 269 Kan. 256, 270, 7 P.3d 252 (2000), *modified on other grounds by State v. Jordan*, 303 Kan. 1017, 370 P.3d 417 (2016), the State fails to show how Jacobs' notice of appeal is any different from a notice of appeal that broadly identifies that an appellant seeks to appeal the judgment and sentence.

After all, an appellant is not required to set forth the specific errors that will be contested on appeal. *State v. Boyd*, 268 Kan. 600, 604, 999 P.2d 965 (2000). The function of the notice of appeal is not to alert the State to all possible arguments on appeal. The State does not generally take significant action when receiving a notice of appeal. Rather, it is the function of the docketing statement and the briefs to list the issues to be argued by the parties. 268 Kan. at 606. The goal is to afford every defendant one appeal. 268 Kan. at 604.

We accept jurisdiction of this appeal.

6

*The stop of Jacobs' van was reasonable.*

Jacobs contends that Officer Young did not have the requisite reasonable suspicion that she was involved in a crime to conduct the initial stop of her vehicle. A panel of this court recently rejected this argument with respect to one of Jacobs' codefendants. See *State v. Walker*, No. 113,637, 2016 WL 3856643, at *2-4 (Kan. App. 2016) (unpublished opinion). Our holding will be no different.

The State bears the burden of proof on a suppression motion. It must prove to the district court the lawfulness of the search and seizure. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When reviewing the district court's decision on a motion to suppress, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). When the material facts on a motion to suppress are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights guarantee "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007).

A traffic stop is an investigatory detention as originally defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and, thus, always triggers a Fourth Amendment analysis. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

7

Kansas has codified the parameters of a permissible *Terry* stop in K.S.A. 22-2402(1), which provides:

> "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

Here, Officer Young needed to have a reasonable articulable suspicion that the occupants of the minivan were involved in criminal activity or had committed a crime. Importantly, Young did not have to specifically know that Jacobs herself was involved in criminal activity to initiate the traffic stop. See *State v. Finley*, 17 Kan. App. 2d 246, 251, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992).

Maddy called 911 after observing suspected criminal activity at Dillard's. The dispatcher advised Young (1) the color and type of vehicle; (2) the direction of the vehicle on Kellogg; (3) the vehicle had a handicap placard and temporary license plate; and (4) three to four African-Americans were in the vehicle. Young testified that while on his way toward Kellogg, he immediately saw a gold minivan coming toward him with a handicap placard and two African-Americans in the front seats. He could not tell for sure whether other occupants were in the minivan. The windows were tinted. Young positioned his vehicle behind the minivan and confirmed there was a temporary plate on the vehicle. Young then stopped the vehicle. Young believed he had stopped the correct vehicle based on the given description of the van, the description of the occupants, and the closeness in time and the proximity to where the incident occurred. The district court concluded that Young had a reasonable articulable suspicion to conduct an investigatory stop of the van.

This court reviews the quantity and quality of information possessed by the officer. See *State v. Slater*, 267 Kan. 694, 697-99, 986 P.2d 1038 (1999). The court examines (1) the type of tip or informant involved; (2) the detail given about the observed criminal activity; and (3) whether the police officer's personal observations corroborate the information supplied in the tip. *State v. Crawford*, 275 Kan. 492, 497-98, 67 P.3d 115 (2003).

An identified citizen-informant's tip based on personal observation of criminal activity is considered high on the scale of reliability. *Slater*, 267 Kan. at 700-02. "An officer may corroborate the tip by . . . finding the person and vehicle and the location as substantially described by the informant." 267 Kan. at 703. Important considerations are the time period between the commission of the crime and the officer's observation of the suspect vehicle, coupled with the distance from the crime scene and the location of the stopped vehicle. See *State v. Glass*, 40 Kan. App. 2d 379, 385-86, 192 P.3d 651 (2008).

Here, Young acted on information from a reliable source. Maddy provided her contact information and gave a first-hand description of the criminal activity, the suspects, and the getaway vehicle. See *Slater*, 267 Kan. at 697. He saw the suspect vehicle almost immediately after receiving the dispatcher's report. It was probable that a gold minivan in the area at that time was the getaway vehicle. Young corroborated the description when he saw that the gold minivan had a temporary tag and a handicap placard. See *Slater*, 267 Kan. at 703. He also saw two African-Americans in the front of the suspect vehicle. The dispatcher reported there were three or four suspects. But the back windows of the vehicle were tinted. It was reasonable for Young to believe there were more suspects in the back of the minivan. See *Glass*, 40 Kan. App. 2d at 384.

The district court did not err in concluding that Young had reasonable suspicion to stop the minivan.

9

*The search of the van was legal.*

Jacobs contends the search of her vehicle was unlawful because there was no consent, no immediate need to search the vehicle incident to arrest, and nothing in plain sight.

Fundamentally, under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights, a warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement. *Neighbors*, 299 Kan. at 239.

At the suppression hearing, the State argued the search of the minivan was justified under the plain view and automobile exceptions to the search warrant requirement. The district court found that once the occupants were removed from the vehicle at gunpoint and arrested, the search of the vehicle was lawful under several exceptions to the search warrant requirement—plain view, search incident to arrest, probable cause, and inventory search.

No Fourth Amendment "search" occurs when an officer merely observes incriminating evidence from a nonintrusive vantage point. *State v. Fisher*, 283 Kan. 272, 292-93, 154 P.3d 455 (2007). Officers may lawfully search a vehicle based on probable cause alone:

> "Under the automobile exception to the Fourth Amendment's warrant requirement, which is a subclass of the probable-cause-plus-exigent-circumstances exception, the mobility of the vehicle provides the exigent circumstances without the necessity of proving anything more. If a vehicle is readily mobile and probable cause exists to believe the vehicle contains contraband or evidence of a crime, the Fourth Amendment does not require a warrant for police to search the vehicle." *State v. Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 4, 272 P.3d 34 (2012).

10

Probable cause to search a vehicle is established if, considering all of the circumstances, there is a "fair probability" that the vehicle contains contraband or evidence. *State v. Overman*, 301 Kan. 704, 711, 348 P.3d 516 (2015).

Here, after the initial stop, Jacobs fled and a police pursuit ensued involving several officers. When it ended, all the occupants of the minivan were removed from the vehicle at gunpoint and handcuffed. At that point, the sliding doors on both sides of the van were open. Officer Young testified that through the open sliding door, he saw several purses with price tags on them on the floor between the two rear captain seats. The purses were in plain view. There was a fair probability that the vehicle contained contraband because the description of the vehicle and its occupants matched the description given by the eyewitness at Dillard's, Jacobs fled when the officer told her she was under arrest, and the officers observed several purses with price tags on them in the vehicle in plain view. Therefore, a search of the vehicle was permitted under the automobile exception to the search warrant requirement.

*There was sufficient evidence to prove theft.*

Jacobs complains about the sufficiency of the evidence. She contends that there was no evidence at trial that she was present at the time of the commission of the theft, that the purses found in her vehicle were in fact stolen, or that she knew the purses were stolen.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence. In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of the witnesses. *State v.*

11

*Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). A verdict may be supported by circumstantial evidence, if such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. However, the evidence need not exclude every other reasonable conclusion or inference. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014).

Jacobs was charged with theft contrary to K.S.A. 2013 Supp. 21-5801(a)(1),(b)(3). Under that statute, theft is "obtaining or exerting unauthorized control over property or services" "with intent to permanently deprive the owner of the possession, use or benefit of the owner's property" and the value of the property or services is at least $1,000, but less than $25,000. For Jacobs to be culpable, she must have "act[ed] with the mental culpability required for the commission [of the crime]" and "intentionally aid[ed] the other in committing the conduct constituting the crime." See K.S.A. 2013 Supp. 21-5210(a). As a general rule, a defendant's mere presence at the time and place of a crime is not sufficient to support a guilty verdict. *State v. Tyler*, 286 Kan. 1087, 1094, 191 P.3d 306 (2008).

The district court found that there was evidence beyond a reasonable doubt that Jacobs "was clearly the driver of the getaway vehicle and that she aided and abetted or assisted in the felony theft of the purses in concert with the other individuals that ran from the store without paying for the merchandise."

We need not review all of the evidence again. But when we view the evidence in the light most favorable to the prosecution, there was sufficient evidence that Jacobs was guilty of theft. Jacobs aided the theft of the purses by acting as the getaway driver. Her own statement to the officer put her outside of Dillard's. The security video showed that the individuals immediately ran out of the store after entering. The minivan was seen backing out of its parking stall very quickly as the individuals ran toward it. The minivan then took off. A reasonable person who did not know her friends were stealing purses

12

would have stopped and asked her friends what they were doing. She fled after Officer Young told her he was investigating the theft and that she was under arrest, indicating that she knew the purses were stolen.

Officer Young testified that he determined the purses found in the minivan came from Dillard's. The purses obviously had price tags on them. The security video from the Dillard's store showed individuals come in, grab the purses, and then immediately run out of the store. Caroline Dawson, an area sales manager at Dillard's, testified that she looked up the handbags that law enforcement showed her in the store's inventory. Dawson determined the value of the handbags to be $2,800. Viewing this evidence in the light most favorable to the prosecution, there was sufficient evidence that the handbags were in fact stolen from Dillard's.

*There was sufficient evidence to prove attempting to elude a police officer.*

In this claim Jacobs narrows her focus to the traffic violations. She contends that the traffic violations that Officer Brunsheen testified about were not "moving violations" within the meaning of the statute.

Jacobs was charged with fleeing or attempting to elude an officer in violation of K.S.A. 2013 Supp. 8-1568(b)(1)(E). The statute deals with moving violations:

> "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) Commits any of the following during a police pursuit: . . . (E) commits five or more moving violations." K.S.A. 2013 Supp. 8-1568(b)(1)(E).

13

Officer Brunscheen testified that he observed Jacobs:

(1) run a stop sign on Woodlawn, a violation of K.S.A. 8-1507 and K.S.A. 8-1528(b);

(2) run a red light at 13th and Woodlawn, a violation of K.S.A. 8-1507 and K.S.A. 2013 Supp. 8-1508(c);

(3) fail to turn into the immediate left lane when turning left onto 13th, a violation of K.S.A. 8-1545(a)(2);

(4) change lanes without signaling into the center lane on 13th, a violation of K.S.A. 8-1548;

(5) change lanes without signaling into the curb lane at 13th and Edgemoor, a violation of K.S.A. 8-1548;

(6) speed by driving 45 mph in a 35 mph zone on Woodlawn, a violation of K.S.A. 2013 Supp. 8-1558;

(7) speed by driving 50 to 55 mph in a 35 to 40 mph zone on 13th, a violation of K.S.A. 2013 Supp. 8-1558; and

(8) fail to signal a turn onto 14th Street, a violation of K.S.A. 8-1548.

Kansas statutes and regulations provide various definitions for the term "moving violation." See *State v. Castleberry*, 48 Kan. App. 2d 469, 481, 293 P.3d 757 (2013), *aff'd* 301 Kan. 170, 339 P.3d 795 (2014). The Kansas Corporation Commission defines moving violation as "the commission or omission of an act by a person operating a motor vehicle that could result in injury or property damage and that is also a violation of a statute, ordinance, or regulation of this state or any jurisdiction." K.A.R. 82-4-1(z) (2015 Supp.). The Kansas Department of Revenue lists specific statutory violations that constitute moving violations. See K.A.R. 92-52-9(a). Certain speeding offenses that are excluded from the definition of "moving violation" are identified in K.S.A. 2013 Supp. 8-1560c.

The exclusion in K.S.A. 2013 Supp. 8-1560c is potentially applicable to these facts. K.SA. 2013 Supp. 8-1560c provides:

> "(a) Any conviction or forfeiture of bail or bond for violating a maximum posted or authorized speed limit of 30 miles per hour or more but not exceeding 54 miles per hour on any highway, by not more than six miles per hour, shall not be construed as a moving traffic violation for the purpose of K.S.A. 8-255, and amendments thereto.
>
> "(b) Any conviction or forfeiture of bail or bond for violating the maximum posted or authorized speed limit of 55 miles per hour or more but not exceeding 75 miles per hour on any highway, by not more than 10 miles per hour, shall not be construed as a moving traffic violation for the purpose of K.S.A. 8-255, and amendments thereto."

Officer Brunscheen testified the authorized speed limit was 35 mph on Woodlawn and 35 to 40 mph on 13th. Thus, only subsection (a) is potentially applicable. Brunscheen testified he was exceeding the speed limit by more than 6 mph on each street. He was going 45 mph on Woodlawn and 50 to 55 on 13th. Brunscheen ascertained that Jacobs' speed was within 5 mph of his speed because he was staying with Jacobs' vehicle as he pursued her. If Jacobs was going 5 mph less than Brunscheen, then the exception could apply.

Even so, Officer Brunscheen testified about eight violations. The district court found there were at least five moving violations. All of the violations listed by Brunscheen constitute "moving violations" under K.A.R. 92-52-9(a). Regardless of whether the exception in K.S.A. 2013 Supp. 8-1560c applies to discount the two speeding violations, there was still undisputed evidence of five or more moving violations.

Going further along this line, Jacobs contends that an accused must be *convicted* of five moving violations before being charged with felony fleeing or attempting to elude an officer. We are not so convinced.

15

The plain language of the statute does not require that the accused to be *convicted* of five or more moving violations. All that is required is the *commission* of five or more moving violations. See K.S.A. 2013 Supp. 8-1568(b)(1)(E). The conviction language of K.A.R. 92-52-9 does not apply in this context. A panel of this court found a similar argument to have "absolutely no merit" in *State v. Cruse*, No. 108,923, 2014 WL 1362647, at *9 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. 1048 (2015).

Also, to construe the statute in such a way would be unreasonable. The State would have to first convict the accused of five moving violations before trying the accused for felony fleeing and eluding. See *State v. Agee*, No. 92,919, 2005 WL 3289388, at *3 (Kan. App. 2005) (unpublished opinion). That would cause delay and be inconsistent with the intent of the statute.

We will now examine the two trial errors alleged by Jacobs. The first deals with the admission of some photographs of the purses, and the second complains about the State's failure to list in the complaint the five moving violations Jacobs committed relating to the charge of attempting to elude a police officer. We will address them in that order.

*With no proper objection by Jacobs we will not consider the questions about the admission of the photographs.*

Jacobs contends that there was insufficient foundation laid at trial for the admission of the photographs of the stolen purses because there was no testimony that the purses were, in fact, stolen.

At trial, Jacobs objected only on the basis of her motion to suppress. Counsel stated, "Your Honor, my objection would just be based on the motion to suppress at this

16

point." Jacobs' motion to suppress was based on the stop, the detention, and the search being illegal.

The statute on this point is specific. K.S.A. 60-404 provides that "[a] verdict . . . shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." Our Supreme Court has required a specific and timely objection even in cases where an evidentiary claim involved the defendant's constitutional rights. Otherwise, "'these and other caselaw exceptions would soon swallow the general statutory rule.'" *State v. Moore*, 302 Kan. 685, 698, 375 P.3d 275 (2015); see *State v. King*, 288 Kan. 333, 348-49, 204 P.3d 585 (2009). A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. Page,* 303 Kan. 548, 558, 363 P.3d 392 (2015).

Jacobs did not properly preserve the foundation issue for this court's review.

We move to the final issue—the complaint.

*We find no reversible error in the complaint.*

Jacobs contends that the State did not properly plead the charge of felony fleeing or attempting to elude an officer because the complaint did not list the alleged moving violations. She acknowledges that she did not raise this issue below. She does contend that it may be raised for the first time on appeal under *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), because the alleged defect impaired her ability to present an adequate defense at trial.

17

In *Hall*, the Kansas Supreme Court held that a defendant may challenge the sufficiency of a complaint for its failure to charge a crime for the first time on appeal if the claimed defect has:

"(a) prejudiced the defendant in the preparation of his or her defense;

"(b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or

"(c) limited in any way defendant's substantial rights to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, §10." 246 Kan. 728, Syl. ¶ 12.

After the briefs were filed in this case, the Supreme Court overruled *Hall* in *Dunn*, 304 Kan. 773, Syl. ¶ 4. In *Dunn*, the court held that charging documents do not confer subject matter jurisdiction; rather the Kansas Constitution does. 304 Kan. 773, Syl. ¶ 1. Kansas charging documents need only show that the case was filed in the correct court, show the court has territorial jurisdiction, and allege facts that if proved beyond a reasonable doubt, show that the defendant committed a Kansas crime. 304 Kan. 773, Syl. ¶ 2. Failure to include sufficient facts does not divest the Kansas court of jurisdiction. Failure to include sufficient facts is the State's procedural failure to invoke the court's subject matter jurisdiction and satisfy K.S.A. 22-3201(b)'s requirement that a charging document state "essential facts" and be "drawn in the language of the statute." 304 Kan. at 811.

Because such an error is not jurisdictional, a defendant's challenge to a charging document raised for the first time on appeal should be treated no differently than other allegations of error. The claimed defect should be raised in the district court. If not, the usual preservation rule should be applied. 304 Kan. 773, Syl. ¶ 5.

18

This means that the defendant must show on appeal that one of three exceptions applies:

(1) the newly asserted claim involves only a question of law arising on proved or admitted facts;

(2) consideration of the claim is necessary to serve the ends of justice or prevent denial of fundamental rights; or

(3) the district court was right for the wrong reason. *Dunn*, 304 Kan. at 819.

Because Jacobs asserts the alleged defect in the complaint impaired her ability to present an adequate defense and abridged her constitutional right to a fair trial, we focus on the second *Dunn* exception. That is to say, we look to serve the ends of justice and prevent a denial of fundamental rights.

According to *Dunn*, a defendant may allege three types of charging document insufficiencies: (1) failure to meet Kansas constitutional minimums of correct court and correct territory; (2) failure to state facts that, if proved beyond a reasonable doubt, would constitute a crime under a Kansas statute; and (3) failure to meet federal and state constitutional due process and notice standards. *Dunn*, 304 Kan. at 815. These issues involve constitutional and statutory interpretation and our review is de novo. *Dunn*, 304 Kan. at 819.

Jacobs' claim deals either with the second or third type of charging document insufficiency. The second type of insufficiency is a statutory error subject to a harmlessness inquiry under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105. See *Dunn*, 304 Kan. at 816-17. The third type of error is subject to the constitutional harmless error standard set forth in *Chapman v. California*, 386 U.S. 18, 22-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). See *Dunn*, 304 Kan. at 817.

With regard to the second type of charging document insufficiency, the Supreme Court stated:

"The plain language of K.S.A. 22-3201(b) is relatively clear: A charging document shall state 'essential facts' constituting the crime charged, and the document 'shall be deemed sufficient' if it is 'drawn in the language of the statute.' The statute's emphasis on 'facts' rather than 'elements' is repeated in other related statutes and legally significant. A Kansas charging document should be regarded as sufficient now, as it was before *Minor*, when it has alleged facts that would establish the defendant's commission of a crime recognized in Kansas. See *State v. Hazen*, 160 Kan. 733, 736-39, 165 P.2d 234 (1946) (charging document sufficient despite failure to include affirmative allegation that defendant intended a specific bodily injury); *James*, 157 Kan. at 400 (charging document sufficient despite erroneously alleging crime took place 6 months after defendant's trial); *Keester*, 134 Kan. at 71 (charging document merely discloses jurisdiction; not necessary for charging document to state both counties in which crime took place). The legislature's definition of the crime charged must be compared to the State's factual allegations of the defendant's intention and action. If those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty, then the charging document is statutorily sufficient." *Dunn*, 304 Kan. at 811-12.

In *State v. Hazen*, 160 Kan. 733, 738, 165 P.2d 234 (1946), the court stated that a charge made "substantially in the words of the statute" was sufficient. The *Dunn* court stated that under the new rule, "we would be more likely to hold that there is no charging document sufficiency problem in the first place." 304 Kan. at 813. The complaint here alleged that Jacobs committed five or more moving violations as the statute required. The complaint did not allege the specific acts that constituted the moving violations. But the complaint appears to be sufficient under *Dunn*, although it could be argued *Dunn*'s focus on facts rather than elements renders the complaint in this case deficient.

With regard to the third type of charging document insufficiency, the *Dunn* court stated:

20

"Every criminal defendant has a right under the Fifth and Fourteenth Amendments to due process before he or she can be deprived of life, liberty, or property. In addition, we have long recognized that a criminal defendant has a right under the Sixth Amendment to notice of the charge or charges pursued by the State. See, *e.g., State v. Loudermilk*, 221 Kan. 157, 158-59, 557 P.2d 1229 (1976); see also *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988) (one goal of adequate charging document to inform defendant of alleged offense, in part to enable double jeopardy claim). And Section 10 of the Kansas Constitution Bill of Rights contains its own requirement that a criminal defendant be informed of the charges against him or her. Depending on the form of a defendant's challenge to a charging document takes, these constitutional provisions may apply and may require relief from a conviction or sentence because the document led to prejudicial due process or notice error. See *State v. Wade*, 284 Kan. 527, 537, 161 P.3d 704 (2007) (instruction on elements of aggravated burglary erroneous because it added ulterior felony on which defendant had no notice before evidentiary portion of trial concluded; error prejudiced defendant, required reversal of conviction)." 304 Kan. at 814.

In *State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), the initial charging document omitted the intended felony upon which the aggravated burglary charge was predicated. The State informed Wade that it was first-degree murder. Wade testified at trial that he entered the house with the intent to scare the occupant. In the jury instructions, aggravated assault was added as an alternative predicate felony. The court stated:

"An information charging burglary is defective in form if it fails to specify the ulterior felony the accused intended to commit when making the unauthorized entry. However, the failure to specify the ulterior intended felony in a burglary information will not constitute reversible error if the defendant was provided adequate notice of the alleged ulterior felony before trial." 284 Kan. 527, Syl. ¶ 2.

In *Wade*, the defendant was prejudiced because he had no notice of the ulterior felony before the evidentiary portion of the trial concluded. 284 Kan. at 537.

21

The cases run contrary to Jacobs' position. Here, the charging document did not specify what five moving violations Jacobs allegedly committed. However, Officer Brunscheen testified in detail at the preliminary hearing about the moving violations on direct and cross-examination. Thus, Jacobs had sufficient notice of the State's contentions before trial. See *State v. Maxwell*, 234 Kan. 393, 398, 672 P.2d 590 (1983). The *Maxwell* court held: "'If the ulterior felony intended in a burglary is made clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error.'" 234 Kan. at 398.

In *State v. Akins*, No. 93,767, 2006 WL 1071549, at *2 (Kan. App. 2006) (unpublished opinion), *rev. denied* 282 Kan. 791 (2006), a panel of this court held that a complaint was not defective for failing to specifically identify the five moving violations the accused allegedly committed: "[T]he recitation that Akins committed five or more moving violations was sufficient to inform him of the charge against which he must defend and was specific enough to support a subsequent double jeopardy defense."

In our view, any error would be harmless under both statutory and constitutional harmless error standards. Under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105, the court examines whether the defect affected the defendant's substantial rights. Under *Chapman*, the inquiry is whether the court can declare a belief that the error was harmless beyond a reasonable doubt. 386 U.S. at 24. Here, Jacobs understood what the State sought to prove. Officer Brunscheen was cross-examined in detail regarding the moving violations at the preliminary hearing. Jacobs was not confused or surprised by the testimony at trial. Jacobs did not request a bill of particulars. Jacobs' lack of a defense to the moving violations does not equate to a lack of notice.

The case cited by Jacobs, *State v. Richardson*, 290 Kan. 176, 224 P.3d 553 (2010), is clearly distinguishable. That case held that since the definition of a moving violation was not a matter of common knowledge among jurors, the court's failure to instruct the

22

jury on the specific moving violations and their elements was erroneous. 290 Kan. at 181. But *Richardson* dealt with defective jury instructions. Here, Jacobs alleges the complaint was defective and Jacobs had a bench trial, not a jury trial. The *Richardson* court observed that the definition of a moving violation was not a matter of common knowledge among jurors and therefore refused to speculate what conduct the jury considered to be moving violations. 290 Kan. at 181, 183. But "[t]he trial court is presumed to know the law." *State v. Johnson*, 258 Kan. 61, 65, 899 P.2d 1050 (1995).

The State's failure to list Jacobs' specific moving violations in the complaint does not constitute reversible error.

Affirmed.